1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11   COURTNEY WRIGHT,                          No.: 2:13-cv-01681-KJM-EFB

12              Plaintiff,

13        v.                                   ORDER

14   THRIFTY PAYLESS, INC., dba RITE
     AID, TIM HENDERSON, RITE AID
15   CORPORATION, and DOES ONE
     through FIFTY,
16
                Defendants.
17

18              This matter is before the court on the motion by defendant Thrift Payless, Inc., dba

19   Rite Aid ("Rite Aid") to dismiss plaintiff's fifth and sixth causes of action for failure to state

20   claims upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  (Def.'s

21   Mot. Dismiss, ECF 4.)  The court held a hearing on the matter on September 27, 2013, at which

22   Samuel Swenson appeared for plaintiff and Sweta Patel for defendant.  As explained below, the

23   court GRANTS Rite Aid's motion to dismiss plaintiff's fifth cause of action without prejudice

24   and GRANTS Rite Aid's motion to dismiss plaintiff's sixth causes of action with prejudice.

25   /////

26   /////

27   /////

28   /////

                                                    1

1    I.      RELEVANT BACKGROUND

2            A.      PROCEDURAL BACKGROUND

3                    On May 6, 2013, plaintiff Courtney Wright filed a complaint in the Sacramento

4    County Superior Court against defendants Rite Aid and Tim Henderson.[1]  Plaintiff alleges six

5    causes of action: (1) false imprisonment; (2) invasion of privacy; (3) defamation; (4)

6    intentional/negligent infliction of emotional distress; (5) breach of the employment contract; and

7    (6) wrongful termination in violation of public policy.  (Defs.' Notice of Removal, Compl., Ex. A

8    ("Compl."), ECF 1-1.)

9                    According to defense counsel's declaration, Rite Aid delivered an answer to the

10   Superior Court and placed it in a drop box on August 8, 2013.  On August 13, 2013, realizing that

11   the answer contained the incorrect case number, Rite-Aid deposited the same answer but with the

12   corrected case number.  On August 14, 2013, Rite Aid requested that the answers be pulled and

13   not filed, and on August 19, 2013, a clerk at the Superior Court notified Rite Aid that the answers

14   had been pulled based on Rite Aid's request.[2]  (Patel Decl. ¶¶ 3-5, ECF 4-1.)

15                   On August 14, 2013, Rite Aid removed the case to this court.  (ECF 1-1.)  On

16   August 21, 2013, Rite Aid filed the instant motion seeking to dismiss plaintiff's fifth and sixth

17   causes of action.  (Defs.' Mot. Dismiss, ECF 4.)  On September 12, 2013, plaintiff filed an

18   opposition.  (Pl.'s Opp'n, ECF 8.)  On September 20, 2013, Rite Aid filed a reply.  In its reply,

19   Rite Aid raises, for the first time, the statute of limitations as a bar to plaintiff's fifth cause of

20   action as applied to a claim against Rite Aid.[3]  (Defs.' Reply, ECF 13.)  The court declines to

21   reach this argument.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district

22

23   [1]  Plaintiff has not served defendant Tim Henderson as of the date of this order.

24   [2]  Despite the language of California Rule of Court 2.210, providing that documents are deemed
     filed with a state court either on the day of deposit in a drop box or the day after, it appears that
25   Rite Aid's documents here were never assigned a filing date.  Plaintiff has not made an issue of
     the effect of the answer's having been deposited with the state court, not once but twice, and so
26   the court only notes with some dismay what the record discloses in this respect.

27   [3]  In its initial motion to dismiss, Rite Aid raised the statute of limitations as a basis for dismissing
     only plaintiff's fifth cause of action as applied to a claim brought against the Union.  (ECF 4 at 7.)
28

1   court need not consider arguments raised for the first time in a reply brief.").

2       B.   ALLEGED FACTS

3       According to the complaint, plaintiff was hired by Rite Aid in April of 2001, and

4   regularly received commendations, promotions, and recognition for her performance.  (Compl.

5   ¶ 5.)  As a Rite Aid employee, plaintiff was a member of the United Food and Commercial

6   Workers Union ("Union"), and as such, her employment was subject to a collective bargaining

7   agreement ("CBA").  (*Id.* ¶ 6.)  Section 3.3 of the CBA provides: "The Employer shall have the

8   right to discharge any employee for just cause."  (ECF 4-2, Ex. A at 4.)

9       The complaint further alleges that on or around May 7, 2012,[4] when plaintiff

10  reported to work, she was met by Rite Aid's loss prevention specialist, Tim Henderson.  (Compl.

11  ¶ 9.)  Mr. Henderson allegedly accused plaintiff of "stealing company property and violating

12  company policies without presenting [p]laintiff with any evidence of the allegations."  (*Id.*)  The

13  complaint states: "Mr. Henderson alleged he knew she stole them because she had been

14  prescribed similar medications in the past."  (*Id.* ¶ 10.)  However, plaintiff alleges she has never

15  disclosed her medical history to Rite Aid.  (*Id.*)  Hence, plaintiff concludes: "Mr. Henderson

16  obtained her prescription history without her authorization from the company's private

17  prescription records."  (*Id.*)  After this incident, plaintiff was suspended from work.  (*Id.* ¶ 12.)

18      On May 24, 2012, plaintiff's supervisor received an email, which was then

19  displayed on the wall in a back office, directing that plaintiff be terminated for "deleting

20  prescriptions from the process and causing significant loss to the company."  (*Id.* ¶ 13.)  Plaintiff

21  contends the reasons for her termination are false.  (*Id.*)

22      Accordingly, plaintiff filed a grievance under the CBA, and the Board of

23  Adjustment, comprising equal number of employer and union representatives, held a hearing on

24  June 19, 2012.[5]  (*Id.* ¶ 15.)  The Board denied the grievance, allegedly without any evidence of

25

26  [4]  The complaint specifies "May 7, 2013" as the date when plaintiff reported to work.  However, because this date appears to be a typographical error, the court supplies the correct date.

27
28  [5]  Section 18.1 of the CBA provides: "[T]he Union and the Employer shall each designate two (2) representatives to meet at a Board of Adjustment . . . ."  (ECF 4-2 at 20.)

1   "just cause," and the Union then sent plaintiff a letter stating it did not intend to proceed to

2   arbitration on the matter.  (*Id.*)

3   II.      LEGAL STANDARD FOR MOTION TO DISMISS

4                Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a

5   complaint for "failure to state a claim upon which relief can be granted."  A court may dismiss

6   "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a

7   cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

8                Although a complaint need contain only "a short and plain statement of the claim

9   showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), to survive a motion to

10  dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim

11  to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell*

12  *Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

13  more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

14  conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'"  *Id.* (quoting

15  *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

16  for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

17  its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses on the

18  interplay between the factual allegations of the complaint and the dispositive issues of law in the

19  action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

20               In making this context-specific evaluation, this court "must presume all factual

21  allegations of the complaint to be true and draw all reasonable inferences in favor of the

22  nonmoving party."  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  This rule

23  does not apply to "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478

24  U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict

25  matters properly subject to judicial notice," or to material attached to or incorporated by reference

26  into the complaint.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

27               A court's consideration of documents either attached to a complaint or

28  incorporated by reference, or of matters of judicial notice, will not convert a motion to dismiss

4

1    into a motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir.

2    2003).  Specifically, a court may "consider unattached evidence on which the complaint

3    'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the

4    plaintiff's claim; and (3) no party questions the authenticity of the document."  *United States v.*

5    *Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011).  Here, the court may consider the CBA

6    because plaintiff's complaint refers to the CBA, the fifth cause of action is based on the CBA, and

7    the authenticity of the CBA is not disputed.

8    III.    <u>DISCUSSION</u>

9            Rite Aid argues plaintiff's fifth cause of action for breach of the employment

10   agreement and sixth cause of action for wrongful termination should be dismissed.  (ECF 4 at 3.)

11   Rite Aid reasons that plaintiff's fifth cause of action should be dismissed because plaintiff did not

12   bring a claim against the Union.  (*Id.* at 5.)  Plaintiff's cause of action for wrongful termination,

13   Rite Aid argues, should be dismissed because plaintiff did not engage in a protected activity.  (*Id.*

14   at 8.)  The court will address these arguments in turn.

15           A.    Fifth Cause of Action: Breach of Employment Agreement

16           Rite Aid's argument for dismissal of plaintiff's breach of contract action has two

17   facets.  First, Rite Aid argues, "[p]laintiff cannot bring a breach of contract claim against Rite

18   Aid, without also bringing a claim against the Union," because the Board of Adjustment's denial

19   of plaintiff's grievance was final.  (*Id.* at 6.)  In support of this argument, Rite Aid argues the

20   complaint does not allege any facts to imply breach of the duty of fair representation by the

21   Union.  (*Id.*)  Second, Rite Aid argues plaintiff cannot assert a claim against the Union as the

22   statute of limitations has expired; thus, plaintiff in turn cannot file a claim for breach of

23   employment agreement against Rite Aid.  (*Id.* at 7.)

24           Plaintiff responds she may bring a claim against Rite Aid without suing the Union.

25   Plaintiff also argues the complaint pleads sufficient facts to imply a breach of the duty of fair

26   representation by the Union.  (ECF 8 at 3.)

27   /////

28

5

Section 301 of Labor Management Relations Act ("LMRA") provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction over the parties . . . ." 29 U.S.C.A. § 185(a).  This section grants federal courts jurisdiction over disputes involving CBAs.  *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985).  Federal courts apply federal common law in adjudicating such disputes.  *Id.*

It is established law that an employee may bring a direct suit against an employer for breach of a CBA.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983).  However, when the CBA provides exclusive grievance and arbitration procedures, an employee must try to exhaust those procedures before suing the employer.  *Id.*  Ordinarily, once grievance procedures are exhausted, the results reached are final.  *Id.* at 164.

If an employee does not agree with the results reached, the employee can then bring an action for breach of the CBA solely against the employer, but to prevail the employee must show the union violated its duty of fair representation.  *Id.* at 165.  In such a case, an employee must prove two claims: first, that the employer breached the CBA, and second, that the union breached the duty of fair representation.  *Id.*  Yet, an employee is free to choose whom to sue.  *Id.* ("The employee may, if he chooses, sue one, the other, or both.").

Regarding the latter, a union breaches its duty of fair representation if its actions in resolving a union member's claim are "arbitrary, discriminatory, or in bad faith."  *Vaca v. Sipes*, 386 U.S. 171, 190 (1967).  "In the grievance area, a union may breach its duty when it arbitrarily ignores a meritorious grievance or processes it in a perfunctory fashion." *Eichelberger v. N.L.R.B.*, 765 F.2d 851, 854 (9th Cir. 1985).

To support her argument that she has alleged sufficient facts to show the Union breached its duty, plaintiff refers to paragraph fifteen of her complaint.  Specifically, plaintiff reasons that the breach "can be reasonably inferred from" her allegations in that paragraph, that "[w]ithout being presented with any evidence of just cause the Board of Adjustment denied the [p]laintiff's grievance," and "the Union had no intention to proceed to arbitration on the matter."

(Compl. ¶ 15; ECF 8 at 3.)  Besides these allegations, plaintiff's complaint is devoid of facts suggesting the Union's breach of its duty.  Reading plaintiff's statements in a light most favorable to plaintiff, the court finds plaintiff's allegations are insufficient to claim the Union's decision not to pursue an arbitration was in bad faith, arbitrary, or discriminatory.

"Leave [to] [amend] need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay."  *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987)).  Here, plaintiff has not pled sufficient facts showing the Union's breach of its duty of fair representation.  However, because plaintiff may be able to plead sufficient facts showing the Union's breach of its duty and allowing her to amend the complaint will not cause undue delay or prejudice, plaintiff is given leave to amend, if she can do so consonant with Federal Rule of Civil Procedure 11.

The court GRANTS Rite Aid's motion to dismiss plaintiff's fifth cause of action without prejudice.

B.  Sixth Cause of Action: Wrongful Termination in Violation of Public Policy

Rite Aid argues plaintiff's sixth cause of action should be dismissed because "[p]laintiff does not allege she was terminated for engaging in a protected activity related to privacy rights . . . ."  (ECF 4 at 8.)

Plaintiff counters that Rite Aid obtained her pharmaceutical records from the company's private records, in which she had a reasonable expectation of privacy, and used that private information to terminate plaintiff.  (ECF 8 at 6.)  Furthermore, plaintiff reasons that the right of privacy is a recognized public policy "that can underlay a claim for wrongful termination . . . ."  (*Id.* at 5.)

"[A]n employer's traditional broad authority to discharge an at-will employee may be limited . . . by considerations of public policy."  *Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 172 (1980) (quoting *Petermann v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local 396*, 174 Cal. App. 2d 184, 188 (1959)).  This rule extends to apply when an employer's right to discharge an employee is governed by a CBA.  S*ee Young v. Anthony's Fish*

7

1   *Grottos, Inc.*, 830 F.2d 993, 1001 (9th Cir. 1987) (discussing a *Tameny* claim brought by an

2   employee covered by a CBA).  That is, an employer has no right to terminate an employee,

3   whether covered by a CBA or not, for "an unlawful reason or a purpose that contravenes

4   fundamental public policy," *Gantt v. Sentry Ins.*, 1 Cal. 4th 1083, 1094 (1992), *overruled on other*

5   *grounds by Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66 (1998).  An employee terminated in

6   violation of public policy may bring a tort action for wrongful discharge against the employer if

7   the following requirements are pled: (1) the existence of an employer-employee relationship;

8   (2) termination of the employee's employment; (3) a "nexus" between the termination and the

9   employee's protected activity; (4) legal causation; and (5) damage to the employee.  *Holmes v.*

10  *Gen. Dynamics Corp.*, 17 Cal. App. 4th 1418, 1426 n.8 (1993).

11          In addition, there must be a pertinent public policy involved.  In determining

12  whether a particular policy may support a wrongful discharge action, courts apply the following

13  four-part test: (a) the policy must be based on either a statute or constitution; (b) it must "inure to

14  the benefit of the public"; (c) it must be substantial and fundamental; and (d) it must be

15  established at the time of termination.  *Stevenson v. Superior Court*, 16 Cal. 4th 880, 889-90

16  (2002).  Public policy cases generally fall into four categories: (1) terminations for exercising

17  constitutional or statutory rights or privileges; (2) terminations for refusing to commit unlawful

18  acts; (3) terminations for executing a statutory obligation; and (4) terminations for

19  "whistleblowing."  *Gantt*, 1 Cal. 4th at 1090.

20          Here, the court finds plaintiff's sixth cause of action does not state a claim upon

21  which relief can be granted because plaintiff's allegations do not sufficiently plead the "nexus"

22  requirement, or in particular, that plaintiff engaged in any protected activity.  In reaching this

23  conclusion, the court need not reach the question whether the right to privacy under the California

24  Constitution and as expressed in the Confidentiality of Medical Information Act ("CMIA"), as

25  alleged by plaintiff, may support a wrongful discharge action.

26          Plaintiff alleges that Rite Aid terminated her "for deleting prescriptions . . . and

27  causing significant loss to the company."  (Compl. ¶ 13.)  Plaintiff further alleges she was

28  accused of stealing medications, and this accusation was based on Mr. Henderson's statement that

1   "he knew she had been prescribed similar medications in the past." (*Id.* ¶ 10.)  However, plaintiff

2   contends she has never disclosed her prescription or medical history to Rite Aid.  (*Id.*)  Plaintiff

3   alleges: "Mr. Henderson obtained [plaintiff's] prescription history without [plaintiff's]

4   authorization from the company's private prescription records." (*Id.*)  Accordingly, plaintiff

5   concludes: "Plaintiff was discharged primarily and at least in part, due to assumptions the

6   defendants formulated about the [p]laintiff based on their invasion into her private medical

7   records." (*Id.* ¶ 43.)

8          Plaintiff's allegations do not show that she was terminated because she engaged in

9   an activity, or declined to engage in an activity, protected by her right to privacy.  For example,

10   plaintiff does not allege she was fired because she refused to disclose her medical information.

11   Instead, plaintiff focuses on Rite Aid's activity of allegedly obtaining her prescription records in

12   violation of her privacy right.  Plaintiff does not cite any law in support of this kind of a *Tameny*

13   claim.  Rather, California courts require employees to show a "nexus" between the employee's

14   protected activity and the employer's adverse action.  *See Turner v. Anheuser-Busch, Inc.*, 7 Cal.

15   4th 1238, 1253 (1994).  The cases cited by plaintiff herself confirm this requirement.  *See Casella*

16   *v. SouthWest Dealer Servs., Inc*., 157 Cal. App. 4th 1127, 1130 (2007) (plaintiff sued his

17   employer because he was terminated for reporting employer's fraudulent activities).

18          In cases where California courts have addressed the question whether an employee

19   was wrongfully discharged in violation of public policy, there has always been an allegation that

20   the termination was because of the employee's protected act or refusal to act.  *See, e.g., Tameny*,

21   27 Cal. 3d at 170 (employee fired for refusing to engage in an illegal scheme); *Hentzel v. Singer*

22   *Co.*, 138 Cal. App. 3d 290, 296 (1982) (employee fired for reporting an alleged violation of a

23   statute); *Peterman*, 174 Cal. App. 2d at 188 (employee fired for refusing to perjure himself).

24   Because plaintiff here does not allege she was fired because of her engagement in a protected

25   activity, plaintiff does not meet the "nexus" requirement.  Based on the nature of plaintiff's

26   allegations, the court determines that leave to amend this claim would be futile; "allegations of

27   other facts consistent with the challenged pleading [cannot] possibly cure the deficiency."

28   *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

1

2          Accordingly, the court GRANTS Rite Aid's motion to dismiss plaintiff's sixth cause of action for failure to state a claim upon which relief can be granted with prejudice.

3

IV.   <u>CONCLUSION</u>

4

      For the foregoing reasons, the court orders as follows:

5

6       1.  Rite Aid's motion to dismiss plaintiff's fifth cause of action is GRANTED without prejudice.

7

8       2.  Rite Aid's motion to dismiss plaintiff's sixth cause of action is GRANTED with prejudice.

9

10      3.  Plaintiff shall have 21 days from the date of this order to file an amended complaint consistent with this order.

11

IT IS SO ORDERED.

12

Dated:  October 14, 2013.

13

14

15   _____
     UNITED STATES DISTRICT JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

10